IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NU RIDE INC., *et al.*, | ) | Chapter 11 |
| | ) | Case No. 23-10831 (MFW) |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| HON HAI PRECISION INDUSTRY | ) | |
| CO., LTD., *et al.*, | ) | |
| | ) | Adv. No. 23-50414 (MFW) |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NU RIDE INC. (F/K/A LORDSTOWN | ) | C.A. No. 24-931 (MN) |
| MOTORS CORP.) AND LORDSTOWN EV | ) | |
| CORPORATION, | ) | |
| | ) | |
| Appellees. | ) | |

## **MEMORANDUM OPINION**

Robert J. Dehney, Sr., Donna L. Culver, Matthew B. Harvey, Matthew Talmo, Echo Yi Qian, MORRIS, NICHOLS, ARSHT & TUNNELL LLP; Daniel Guyder, Bradley Pensyl, Justin Orman, Joseph Badtke-Berkow, Jocao Herz, ALLEN OVERY SHEARMAN STERLING US LLP, New York, NY; Noah Brumfield, Patrick Pearsall, ALLEN OVERY SHEARMAN STERLING US LLP, Washington, DC— Counsel to Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., Foxconn Ventures Pte. Ltd., Foxconn (Far East) Limited, and Foxconn EV System LLC.

Justin A. Nelson, Abby Noebels, SUSMAN GODFREY L.L.P., Houston, TX; Glenn Bridgman, Connor Cohen, SUSMAN GODFREY L.L.P., Los Angeles, CA; Patrick A. Jackson, Ian J. Bombrick, Jaclyn C. Marasco, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, DE; Eric J. Monzo, Brya M. Keilson, MORRIS JAMES LLP, Wilmington, DE—Counsel to Nu Ride, Inc. (f/k/a Lordstown Motors Corp.) and Lordstown EV Corporation.

September 12, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arose in the chapter 11 cases of reorganized debtors Nu Ride, Inc. (f/k/a Lordstown Motors Corp.) ("Lordstown Motors") and Lordstown EV Corporation ("LECV," and together with Lordstown Motors, "the Plaintiffs") in connection with the Complaint (Adv. D.I. 1)[1] ("the Complaint") filed by Plaintiffs against appellants Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., Foxconn Ventures Pte. Ltd., Foxconn (Far East) Limited, and Foxconn EV System LLC (together, "the Defendants"). As set forth in the Complaint, prior to the bankruptcy filing, Plaintiffs had developed and manufactured a line of full-size electric pickup trucks at a plant in Lordstown, Ohio. (Complaint ¶¶ 2, 20). Although the Plaintiffs at one point had been valued at $5.3 billion, the chapter 11 sale of their remaining assets generated only $10 million. *In re Nu Ride Inc.*, 2024 WL 4376130 at *2 (citing Bankr. D.I. 586).

Plaintiffs filed the eleven-count Complaint which overall asserts that the Defendants induced the Plaintiffs to enter into a series of agreements, promising support through investment and expertise, while harboring the intent to acquire the Plaintiffs' most valuable asset, the Ohio plant, for themselves without fulfilling those promises. Relevant here, the Complaint asserts claims under four separate contracts between different parties with varying dispute resolution procedures.

Defendants sought dismissal of each of the eleven counts in favor of arbitration. The Bankruptcy Court issued an order, dated August 1, 2024, and as amended on October 1, 2024 (Adv. D.I. 64) ("the Order") and an accompanying opinion *In re Nu Ride Inc.*, 2024 WL 4376130 (Bankr. D. Del. Oct. 1, 2024) ("the Opinion"), which granted in part and denied in part Defendants' motion to dismiss. The Bankruptcy Court determined that Counts 6 and 9 asserted claims between contract

---

[1] The docket of the adversary proceeding, captioned *Nu Ride Inc. v. Hon Hai Precision Industry Co., Ltd. et al.*, Adv. No. 23-50414 (MFW) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The docket of the chapter 11 case, captioned *In re Nu Ride Inc.*, No. 23-10831 (MFW) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

signatories, which fell within their contractual arbitration provision, and which should be dismissed in favor of arbitration.[2]  *In re Nu Ride Inc*., 2024 WL 4376130 at *25.  The Bankruptcy Court determined that the remaining nine claims—tort claims and contract claims arising under different contracts without arbitration provisions—were not between signatory parties to the arbitration agreement, were not within the scope of the contractual arbitration clause, and should not be sent to arbitration.  *Id*.

Defendants have appealed the Order, arguing, among other things, that the remaining claims not dismissed in favor of arbitration all arise out of or relate to the agreement containing the arbitration clause.  The Bankruptcy Court has since stayed the entire adversary proceeding pending final resolution of this appeal.  *In re Nu Ride*, 666 B.R. 510 (Bankr. D. Del. 2024).  (Adv. D.I. 68).

The parties completed briefing on the merits of the appeal on November 21, 2024.  (D.I. 6, 17, 25).  On January 27, 2025, Plaintiffs filed a Motion for Certification of Direct Appeal to the Court of Appeals (D.I. 29) ("the Certification Request") on the basis that certification "may materially advance the progress of the case" under 28 U.S.C. § 158(d)(2)(a)(iii).  The Certification Request is also fully briefed.  (D.I. 29, 30, 31, 33).  No party requested oral argument.

For the reasons set forth herein, the Court will affirm the Order and deny the Certification Request.

## I.    BACKGROUND

### A.    The Parties and the Agreements

The following facts taken from the Complaint appear undisputed.  Plaintiffs are Nu Ride Inc. f/k/a Lordstown Motors Corp. ("Lordstown Motors") and Lordstown EV Corporation ("LEVC").  Lordstown Motors is an American electric vehicle ("EV") manufacturer that was formed in 2018 for "developing, engineering, launching, and selling all-electric vehicles to commercial fleet customers,"

---

[2]      That portion of the Order has not been appealed.

including an electric pickup truck called the Endurance. (Complaint ¶ 2). In 2019, Plaintiffs purchased from General Motors the 6.2 million square foot plant in Lordstown, Ohio, and Lordstown Motors enjoyed a market capitalization of over $5.3 billion. (*Id.*). After some initial setbacks in bringing the Endurance to market, Lordstown Motors sought partnerships that would provide cost-savings for the Endurance and develop additional EVs to bring to market. (*Id.* ¶ 21).

Lordstown Motors and LEVC decided to forge a strategic partnership with global electronics manufacturer Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group) ("Hon Hai") also doing business as "Foxconn." (*Id.* ¶ 22). Defendant Hon Hai is the world's largest electronics manufacturer with revenues of more than $200 billion in 2022. (*Id.*). Several of Hon Hai's affiliates are also Defendants in the adversary proceeding: Foxconn EV Technology, Inc. ("Foxconn Technology"); Foxconn Ventures Pte. Ltd. ("Foxconn Ventures"); Foxconn (Far East) Limited ("Foxconn (Far East)"), and Foxconn EV System LLC ("Foxconn System").

From November 2021 to November 2022, certain Plaintiffs and certain Defendants entered into a series of agreements. Relevant to this appeal, each of the four main agreements involved different parties and different dispute resolution procedures, as set forth below.

### 1.    The Asset Purchase Agreement (A56–126) ("the APA")

On November 10, 2021, Lordstown Motors, LEVC, Foxconn Technology, and Foxconn (Far East) entered into the APA to sell the Lordstown, Ohio, manufacturing facility. (Complaint ¶¶ 25, 28; APA A56–126). Along with the physical plant, hundreds of employees would become employees of Foxconn System. (*Id.*). The APA also contemplated "commercially reasonable best efforts" to enter into a contract-manufacturing agreement to produce vehicles at the Lordstown plant and a joint venture agreement to develop other commercial vehicles in the North American market. (Complaint ¶ 29; A94, APA § 4.1(k)). The APA transaction closed on May 11, 2022. (Complaint ¶ 33). Under the APA, the "Parties"—*i.e.*, Lordstown Motors, LEVC, Foxconn Technology, and Foxconn (Far

East)— agreed that "any Proceeding in connection with or relating to this Agreement or any matters contemplated hereby shall be brought exclusively in a court of competent jurisdiction located in the State of Delaware."  (A59, APA § 10.14).

### 2.    The Contract Manufacturing Agreement (A128-161) ("the CMA")

On May 11, 2022—the date the APA closed—Foxconn System and LEVC contracted for manufacturing the Endurance at the Lordstown plant as contemplated in the APA.  The CMA involved both a manufacturing agreement and an agreement to leverage Defendants' size and power to procure superior supplier agreements.  (A128–61; Complaint ¶ 33).  The CMA's dispute resolution procedure involves arbitration in Ohio of all claims "arising out of or under this Agreement."  (A156–57, CMA § 23).

### 3.    The Joint Venture Agreement (A163-224) ("the JVA")

Also on May 11, 2022, LEVC and Foxconn Technology executed the Limited Liability Company Agreement of MIH EV Design LLC—also known as the JVA—which created a joint venture owned 45% by LEVC and 55% by Foxconn Technology.  (*See* A174 (setting forth ownership percentages)).  The JVA contemplated joint development of Model C and Model E electric vehicles based on existing designs by non-party "Foxtron," a Hon Hai-affiliated joint venture.  (A173).  As the Bankruptcy Court explained, "the allegations are that the Defendants almost immediately reneged on their obligations rather than perform them in good faith."  *In re Nu Ride*, 2024 WL 4176310 at *18.  The Complaint asserts that Foxconn Technology failed to live up to its commitments in the JVA—including by refusing to agree to a management services agreement, refusing to agree on a budget, and failing to cooperate on Model C and Model E development.  (*See* Complaint ¶¶ 34–35, 37–42).  LEVC and Foxconn Technology terminated the JVA on November 22, 2022.  (A397–98 (termination agreement)).  As relevant here, the JVA included a dispute resolution procedure applicable to "Members"—defined to solely include LEVC and Foxconn Technology (A167)—over

disputes "arising out of or relating to" the JVA. (A215–216, JVA § 13.8). The JVA's arbitration provision extends to

> any and all disputes, controversies or Claims (*whether sounding in contract, tort, common law, statutory law, equity or otherwise*), other than a Board Deadlock, *arising out of or relating to* this Agreement, including any question regarding its existence or scope, the meaning of its provisions, or the proper performance of any of its terms by either Member, or its breach, termination or invalidity ...

(*Id.* (emphasis added)).

### 4. The Investment Agreement (A226-286) ("the IA")

Lordstown Motors and Foxconn Ventures entered into the Investment Agreement on November 7, 2022. Under the IA, Foxconn Ventures agreed to provide capital to Lordstown Motors; some of that capital was unrestricted and other capital was targeted at specific new vehicle programs in connection with nonparty Softbank. (Complaint ¶¶ 44–45). The Complaint asserts that, just days into the agreement, Foxconn Ventures requested a pivot away from Softbank's plans and proposed an internal program. (*Id.* ¶ 47). In the months that followed, the Complaint further asserts, Foxconn Ventures slow-walked and breached its funding obligations, ultimately never funding a subsequent common closing of $47.3 million or subsequent preferred closing of $70 million. (*Id.* ¶¶ 45–78). According to Plaintiffs, these failures—and the related disclosures accompanying them—devastated their business. (*Id.* ¶ 78). As relevant here, the IA provides that "[a]ll Actions arising out of or relating to this Agreement shall be heard and determined in . . . any state or federal court within the State of Delaware." (A281–282, IA § 8.06).

### B. The Adversary Proceeding

Lordstown Motors and LEVC filed voluntary bankruptcy petitions on June 27, 2023. (A28 ¶ 79). With the bankruptcy petition, Lordstown Motors and LEVC also filed the adversary proceeding.

Counts 2–7 and 9 assert seven breach-of-contract claims, each based on one of the four contracts described above. (Complaint ¶¶ 86–139, 146–52). Counts 1 and 8 assert common-law fraud claims against Hon Hai and Foxconn (Far East). (*Id*. ¶¶ 80-85,140-145). Count 10 asserts a tortious interference claim against Hon Hai. (*Id*. ¶¶ 153–58). As the Bankruptcy Court recognized, Counts 1 and 8 "state claims . . . for fraud based on allegations of different actions and damages" than the relevant contract claims. *In re Nu Ride*, 2024 WL 4176310 at *16. The Bankruptcy Court further explained that Count 10 (tortious interference) involves allegations "sufficient to infer that Hon Hai was not pursuing in good faith the legitimate profit-seeking activities of the enterprise but was engaged in a fraudulent scheme to obtain the Plaintiffs' assets." *Id*. at *21. Count 11 asserted an equitable subordination claim against all Defendants based on conduct alleged in Counts 1 through 10. (Complaint ¶¶ 159–63). The counts may be summarized as follows:

| Count | Claim | Plaintiff(s) | Defendant(s) |
|---|---|---|---|
| 1 | Fraud | Lordstown Motors; LEVC | Hon Hai |
| 2 | Breach of IA § 2.01(b) | Lordstown Motors | Foxconn Ventures |
| 3 | Breach of IA § 5.20 | Lordstown Motors | Foxconn Ventures |
| 4 | Breach of IA § 7.01 | Lordstown Motors | Foxconn Ventures |
| 5 | Breach of IA § 5.02(b) | Lordstown Motors | Foxconn Ventures |
| 6 | Breach of JVA | LEVC | Foxconn Technology |
| 7 | Breach of APA | LEVC | Foxconn Technology; Foxconn (Far East) |
| 8 | Fraud | Lordstown Motors; LEVC | Foxconn (Far East) |
| 9 | Breach of CMA | LEVC | Foxconn System |
| 10 | Tortious Interference | Lordstown Motors; LEVC | Hon Hai |
| 11 | Equitable Subordination premised on Counts 1–10 | Lordstown Motors; LEVC | All Defendants |

On September 29, 2023, Defendants moved to dismiss the Complaint, arguing that all claims were arbitrable, or in the alternative, failed to state a claim. (A313–56). On November 6, 2023, Lordstown Motors and LEVC filed a response opposing dismissal. (A357–98). Briefing was complete on November 30, 2023. (A414–34 (reply)).

### C. <u>The Opinion and Order</u>

The Bankruptcy Court's 59-page Opinion carefully analyzed Defendants' assertions that all claims should be dismissed in favor of arbitration. The Bankruptcy Court concluded that the breach-of-contract claims under the JVA and CMA—the two contracts with dispute resolution procedures that included arbitration—were arbitrable and dismissed those claims in favor of arbitration. *In re Nu Ride*, 2024 WL 4176310 at *25. The Bankruptcy Court concluded that the other nine counts were not bound by arbitration provisions and should not be dismissed in favor of arbitration. *See id.* For example, the Bankruptcy Court found that LEVC's claim for breach of the APA (against Foxconn Technology and Foxconn (Far East)) and Lordstown Motors' claim for breach of the IA (against Foxconn Ventures) were not sufficiently "related" to the JVA to compel arbitration under that separate agreement. *See id.* at *8. The Bankruptcy Court noted that the APA and IA "do not have arbitration provisions, and instead "provide that disputes under those contracts are to be heard in federal or state courts in Delaware," *id.* & n.66. Similarly, the Bankruptcy Court concluded that the focus of the tort claims related to "all of the Defendants' actions, not just actions related to the CMA or JVA," *id.* at *9, and thus fell outside of the arbitration clauses. Finally, the Bankruptcy Court permitted the Plaintiffs to pursue their equitable subordination claims to the extent they can do so "without relying on inequitable conduct relating to the CMA." *Id.* at *10.

The Bankruptcy Court also denied Defendants' motion to compel arbitration because Plaintiffs "did not agree to arbitrate any claims against the Defendants except those extant under the CMA and JVA," declining to equitably "extend the limited arbitration clauses of those agreements"

to non-signatories. *Id*. at *11. The Bankruptcy Court noted that "[s]everal of the cases cited by the Defendants actually denied enforcement of an arbitration provision against a non-signatory," and regardless, non-signatory arbitration cases were "premised on equitable considerations that the Court [did] not find present here." *Id*. Not only were those equitable considerations missing, there were "substantial equitable reasons" against forcing arbitration involving non-signatories, including that the Defendants pushed arbitration in two different fora, that there were "no equitable reasons why [those claims] should be heard in an arbitration involving distinct claims against other parties under other contracts," and that the tort claims were "premised on all the actions of the Defendants," which went far beyond the JVA. *Id*. at *12. On August 12, 2024, Defendants filed a timely notice of appeal. (D.I. 1).

## II.    <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) and 9 U.S.C. § 16 (providing appeal from an order denying arbitration). *In re Mintze*, 434 F.3d 222, 227 (3d Cir. 2006). The sole issue presented on appeal is whether the Bankruptcy Court erred in denying in part Defendants' motion to dismiss, through which Defendants sought to compel arbitration of all counts in the Complaint. (D.I. 6 at 4). The Court exercises plenary review over the denial of a motion seeking to compel arbitration. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010); *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (plenary review of questions of law include questions of contract and statutory interpretation).

## III.    <u>ANALYSIS</u>

For the reasons set forth below, the Court agrees that Defendants have not shown that non-signatory Defendants Hon Hai, Foxconn Ventures, Foxconn (Far East), and Foxconn System can enforce the JVA's arbitration clause or that it should be enforced against non-signatory Lordstown Motors.

### A.    Defendants' Motion to Dismiss Failed to Satisfy Threshold Inquiry as to Whether the JVA's Arbitration Provision is Enforceable By Non-Signatories—Counts 1-5, 8, 10, 11

The first sentence of Defendants' opening brief states: "At issue in this appeal is the contractually agreed upon right to arbitrate all disputes relating to a joint venture between the parties." (D.I. 6 at 1).  But "the parties" to the joint venture included only two entities—LEVC and Foxconn Technology—as the only two signatories to the JVA.  And the Bankruptcy Court sent the breach of JVA claim between those parties (Count 6) to arbitration (and similarly sent Count 9 to arbitration based on the CMA signatories' agreement to arbitrate under the CMA).  Defendants' argument that the remaining claims must be arbitrated rest on a single contractual basis: the JVA's arbitration clause, applicable to "Members"—again, defined as only LEVC and Foxconn Technology (A167)—over disputes "arising out of or relating to" the JVA.  (A215–216, JVA § 13.8).  But four of the five Defendants – Hon Hai, Foxconn Ventures, Foxconn (Far East), and Foxconn System – never signed the JVA, and some are signatories to other contracts with their own separate venue provisions.  Although Defendants argue at length that each of the remaining claims is one "arising out of or relating to" to the JVA, they have failed to satisfy the threshold inquiry as to whether the JVA is enforceable by the non-signatory Defendants, and have further failed to demonstrate that for equitable reasons the arbitration provision may be enforced against non-signatory plaintiff Lordstown Motors.  The sole remaining claim between signatories to the JVA is Count 7—LECV's claim against Foxconn Technology—*for breach of the APA*.  The APA has its own dispute resolution procedure, however, which requires litigation in court, not before an arbitrator, and the claim is otherwise outside the scope of the JVA's arbitration clause.  All other claims advanced by the Plaintiffs involve a party that did not sign the JVA.

According to Defendants, the Bankruptcy Court erred in concluding that the JVA's arbitration provision is not binding on non-signatories.  (*See* D.I. 6 at 23-29; D.I. 25 at 10-19).  As Defendants

correctly explain, the Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *In re Paragon Offshore PLC*, 588 B.R. 735, 750 (Bankr. D. Del. 2018) (citing 9 U.S.C. § 2). Thus, as the Third Circuit has explained, where an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, unless the party opposing arbitration can establish Congressional intent to exclude the particular claims at issue from the FAA's pro-arbitration policy. *In re Mintze,* 434 F.3d at 229–30. This is true regardless of whether the proceedings subject to arbitration are core or non-core. *Id.* at 229-32. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24 (1983).

The presumption in favor of arbitration did not, however, distract the Bankruptcy Court from the fact that four of the five Defendants are not party to the JVA. As Plaintiffs point out, the Supreme Court has made clear that "the first principle that underscores all of our arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (cleaned up). Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). In *Griswold v. Coventry First LLC*, the Third Circuit affirmed a lower court's denial of a motion to compel arbitration against non-signatories to the contract, making clear that: "The presumption in favor of arbitration does not extend, however, to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause." 762 F.3d 264, 271 (3d Cir. 2014). Instead, as the Third Circuit has explained, "the threshold inquiry under §§ 3 and 4 of the FAA [is] whether, under traditional contract law principles, an agreement to arbitrate

is enforceable between the parties." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 86–87 (3d Cir. 2010).[3]

Here, there is no enforceable agreement to arbitrate among the non-signatories. The JVA signatories (LEVC and Foxconn Technology) *could have* contractually agreed to permit any or some third parties to enforce the JVA's dispute resolution process against JVA signatories—instead, they contracted for the opposite result. The JVA's express terms prohibit nonparties from claiming a right to arbitrate under the JVA: "*no provision of this Agreement shall be deemed to confer upon any other Person*, including any equityholders of any Member, *any* remedy, Claim, Liability, reimbursement, cause of action or other *right*." (A215, JVA § 13.6 (emphasis added)). Forcing a party to arbitrate is just such a contractual "right" that was not given to "any other Person"—including the non-signatory Defendants. The JVA signatories' intent is clear from language specifying that "other Persons" included "equityholders" of LEVC and Foxconn Technology. Defendants wish to give Hon Hai, Foxconn Ventures, Foxconn (Far East), and Foxconn System the "right" to enforce their preferred provision of the JVA against LEVC (the arbitration clause), which the contractual language negates. Moreover, Foxconn Ventures, Foxconn (Far East), and Foxconn System executed other contracts that have different forum-selection clauses that they now wish to ignore—the IA, APA, and CMA, respectively—which further undercuts their position. The Bankruptcy Court agreed that the Plaintiffs had not agreed to arbitrate any claims against the Defendants except those extant under the CMA and JVA. The Bankruptcy Court further recognized that "[s]everal of the cases cited by the Defendants

---

[3] "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *In re Paragon Offshore PLC*, 588 B.R. 735, 750 (Bankr. D. Del. 2018) (internal quotations and citation omitted; ellipsis in original). Thus, in addition to applicable federal law, Delaware law applies to whether compelling arbitration under the JVA is proper. (*See* A215, JVA § 13.7 (Delaware law governs)).

actually denied enforcement of an arbitration provision against a non-signatory." *In re Nu Ride*, 2024 WL 4176310 at *11.

Defendants do little to address this "threshold" inquiry of whether, under traditional contract law principles, the agreement to arbitrate is enforceable between the non-signatories. (*See* D.I. 6 at 23-29). Defendants allude to an agency theory, arguing that the claims alleged against three of the non-signatories—Hon Hai, Foxconn Ventures, and Foxconn (Far East)—are "based on the same facts and are inherently inseparable" to signatory defendant Foxconn Technology "such that a court may refer claims against a non-signatory to arbitration." (*Id.* at 27). In support, Defendants cite *Dusich* and *DuPont*—two cases that discuss in relevant part whether traditional agency doctrines may apply to non-signatories. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001) (describing "principles of agency law"); *Dusich v. Carrols Rest. Grp.,* 2020 WL 13645755, at *3-*4 (M.D. Pa. May 26, 2020) (assessing "agency theory"). But any agency theory has been waived based on Defendants' failure to raise it with the Bankruptcy Court. *See In re Tribune Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018) ("[T]his contention is waived, as Younge never presented it to the Bankruptcy Court.").[4] Even if it was raised below, the Third Circuit in *DuPont* court made clear that "[t]o bind a principal by its agent's acts, the [party] *must demonstrate* that the agent was acting on behalf of the principal." 269 F.3d at 198 (emphasis added). Defendants have not shown that LEVC executed the JVA as an agent for Lordstown Motors, nor could they make such a showing, as Plaintiffs point out, because the parties to the JVA specifically agreed that nonparties received no "right" or "remedy" under the contract.

---

[4]    Defendants reply that they are not relying on any agency theory but simply relying "on principles announced in cases like *[] DuPont . . .* that a 'close relationship' between a signatory and non-signatory to an arbitration clause can be enough for the clause to capture claims against the non-signatory." (D.I. 25 at 12 (citing *DuPont*, 269 F.3d at 199, 201)). This does not advance their cause, as discussed further herein.

(A215, JVA § 13.6).[5]  Nor have Defendants shown that Foxconn Technology was executing the JVA on behalf of any other party.  Indeed, Defendants have not even attempted to show a parent-subsidiary relationship between all of the signatories and non-signatories.  Finally, Defendants have cited no case applying this theory to permit *non-signatories* to force claims by *other non-signatories* into arbitration (as would be necessary for the claims brought by Lordstown Motors).

Defendants further allude to a "third-party beneficiary" theory, citing *DuPont* for its observation that "[i]n a series of cases, courts have allowed non-signatory *third party beneficiaries* to compel arbitration against signatories of arbitration agreements."  (D.I. 6 at 24 (emphasis added)).  To the extent Defendants are arguing that some non-signatory is a third-party beneficiary, this argument was not raised below either and was also waived.  This argument also fails because § 13.6 of the JVA expressly states that the JVA creates "No Third Party Beneficiaries."  (A215, JVA § 13.5).

**B.    The Bankruptcy Court Properly Declined to Force Non-Signatory Plaintiffs Into Arbitration Based Upon Equitable Principles—Counts 1-5, 8, 10, 11**

Defendants' opening brief in support of its motion to dismiss all counts in favor of arbitration did not make any arguments as to why non-signatories should be bound to arbitrate or why they should be permitted to force arbitration on any non-JVA/CMA claims.  (*See* Adv. D.I. 9 at 12-17).  In their reply brief in support of their motion to dismiss, Defendants asserted that:

> The Third Circuit and Delaware courts have compelled arbitration as to non-signatories in a number of situations, including: (i) when there is a "close relationship between the entities involved," *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199, 201 (3d Cir. 2001); (ii) when a non-signatory to a contract containing an arbitration clause "embrace[s]" that contract, *see Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220-221 (3d Cir. 2014); (iii) when a signatory to an arbitration clause raises allegations of

---

[5]    Defendants further suggest that a complaint that "make[s] no distinction between the entities" somehow serves as a penalty that requires arbitration of claims involving non-signatories. (D.I. 6 at 25 (citing *Dusich*, 2020 WL 13645755, at *4)).  *Dusich* mentioned this in remanding for further factual consideration on whether an agency theory applied.  *Dusich* did not suggest that complaint-drafting somehow creates an agency relationship or alters contractual relationships between the parties.

"substantially interdependent and concerted misconduct" by both a signatory and a non-signatory to the clause, *see Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006); and (iv) when a signatory to a written agreement containing an arbitration clause relies on the terms of the written agreement in asserting its claims against the non-signatory, *see Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. CIV.A. 2037-N, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006).

(Adv. D.I. 19 at 6-7).  As the Bankruptcy Court observed, "[t]he Defendants contend that all those circumstances exist here: the Plaintiffs themselves have alleged that all of the Defendants are closely related, that they acted in concert to commit a fraud on the Plaintiffs, and that the Plaintiffs are relying on the various terms of the contracts to support their claims.  In addition, all of the Defendants have "embraced" the contracts to the extent they all seek to enforce the arbitration clauses." *In re Nu Ride*, 2024 WL 4376130 at *10.  The Bankruptcy Court recognized, however, that "[s]everal of the cases cited by the Defendants actually denied enforcement of an arbitration provision against a non-signatory," and "[t]he remaining citations did "not convince the [Bankruptcy] Court to extend the limited arbitration clauses of those agreements to cover all of the Plaintiffs' claims in the Complaint." *Id.* at *11.

In *NAMA Holdings*, the Delaware Chancery Court advised that "it is important to proceed with a good deal of caution" in applying equitable estoppel, "lest nuanced concepts of equity be allowed to override established legal principles of contract formation." *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 433 n.35 (Del. Ch. 2007).  In *Flintkote*, the Third Circuit quoted *NAMA* for the same cautionary direction and recognized that "Delaware law . . . imposes the burden of producing clear and convincing proof on the party asserting estoppel." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 221 (3d Cir. 2014).

Equitable estoppel is a discretionary doctrine.  *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006) (applying equitable estoppel analysis "holding that the trial court had not *abused its discretion* by compelling plaintiffs to arbitrate with a

nonsignatory" (citing *Grigson v. Creative Arts Agency*, 210 F.3d 524, 530–31 (5th Cir. 2000) (emphasis added)); *see also Ishimaru v. Fung*, 2005 WL 2899680, at *18 (Del. Ch. Oct. 26, 2005) (a signatory "*may* be required to arbitrate . . . when . . . concepts of equitable estoppel dictate that result" (emphasis added)); *Flintkote*, 769 F.3d at 223 ("Delaware courts have also recognized that the doctrine of equitable estoppel *may* apply") (emphasis added). Defendants do not argue otherwise. (*See e.g.*, D.I. 6 at 23 ("a signatory *may* be bound to arbitrate claims" (emphasis added)); *id.* at 24 ("a court *may* refer claims against a non-signatory to arbitration" (emphasis added)). The Court agrees that the non-signatory Defendants' efforts to compel signatory LEVC to arbitrate its *non*-JVA claims (Counts 1, 7, 8, 10, 11 for fraud, tortious interference, equitable subordination, and breach of the APA) fail for two independent reasons: (1) as the Bankruptcy Court recognized, "substantial equitable reasons" make equitable estoppel inappropriate, *In re Nu Ride*, 2024 WL 4376130 at *11; and (2) Defendants have failed to demonstrate an affirmative basis for equitable estoppel.

      **C.**      **Defendants Offer No Theory of Estoppel By Which a Non-Signatory May Bind Another Non-Signatory to an Arbitration Clause – Lordstown Motors' Claims Against: Hon Hai (Counts 1, 10, 11), Foxconn (Far East) (Counts 8, 11), Foxconn Ventures (Counts 2–5, 11), and Foxconn System (Count 11)**

Defendants explain that the Third Circuit recognizes two theories of estoppel: (i) when a signatory seeks to compel a non-signatory to arbitrate; and (ii) when a non-signatory seeks to compel a signatory to arbitrate. (D.I. 6 at 26 (quoting *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp. 2d 519, 521 n.2 (E.D. Pa. 2003)). Notably, Defendants do not assert any third theory of estoppel that would permit a *non-signatory* to the arbitration agreement to compel another *non-signatory* to arbitrate. *See Invista*, 625 F.3d at 85 ("Not surprisingly, *Rhodia, S.A.* offers no authority . . . that a non-signatory to an arbitration agreement can compel another non-signatory to arbitrate certain claims and we have found none."); *cf. DuPont*, 269 F.3d at 202 ("Appellants recognize that these cases bind a *signatory* not a *non-signatory* to arbitration, but argue that this is a distinction without a difference. They are wrong."); *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)

("Thomson, however, cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists. . . .  Therefore, the district court properly determined these estoppel cases to be inapposite and insufficient justification for binding Thomson to an agreement that it never signed.").  Thus, even under Defendants' own theory, equitable estoppel cannot force arbitration of Lordstown Motors' claims against Hon Hai (Counts 1, 10, 11), Foxconn (Far East) (Counts 8, 11), Foxconn Ventures (Counts 2–5, 11), or Foxconn System (Count 11).

### D. Equitable Considerations Weigh Against Compelling Arbitration Involving Non-Signatories—Counts 1-5, 7 (against Foxconn (Far East)), 8, 10, 11

The Bankruptcy Court determined that Defendants had not shown any basis for requiring arbitration involving parties who did not sign the JVA under the JVA's arbitration provisions, *In re Nu Ride*, 2024 WL 4176310 at *11, and further recognized that "there are substantial equitable reasons not to do so in this case."  *Id.*  These reasons included that there were independent claims brought under the CMA and JVA, which already "require arbitration in two different fora," *id.*, and that "there are no equitable reasons why they should be heard in an arbitration involving distinct claims against other parties under other contracts," *id.* at 12.  Defendants' briefs make little effort to respond to the Bankruptcy Court's careful analysis.  The Court agrees with the Bankruptcy Court.

Among other reasons, Defendants' logic of ignoring which parties signed which contracts in favor of intermingling all claims cuts both ways.  Under this logic, arguably all claims are also subject to the APA's dispute resolution provision, requiring court litigation of "any Proceeding in connection with or relating to this Agreement or any matters contemplated hereby."  (A119, APA § 10.14(a)).  Likewise, the IA dispute resolution provision requires court litigation for "[a]ll Actions arising out of or relating to this Agreement."  (A281, IA § 8.06(b)).  The non-signatory Defendants are asking this Court to apply *equitable* discretion to enforce only the JVA's dispute resolution procedures *instead* of the procedures under the CMA, APA, and IA.

Defendants' logic also allows non-signatories to the JVA who *are* signatories to other contracts with other forum-selection clauses to leverage the JVA's arbitration procedures. As the Bankruptcy Court recognized, "there are no equitable reasons why they should be heard in an arbitration involving distinct claims against other parties under other contracts. *In re Nu Ride,* 2024 WL 4176310 at *12; *see also id.* (noting "the arbitration provisions of the CMA and JVA are not so broad as to cover the claims of fraud by the Defendants" . . . "[t]herefore there is no equitable reason to compel arbitration of all those claims"). Similarly, the remaining equitable subordination claims,[6] which arise under bankruptcy law, offer no equitable reason to permit non-signatories to send them to arbitration.

Because Defendants do not assert any estoppel theory permitting a non-signatory to compel another non-signatory to arbitrate, their equitable arguments would also produce bizarre results. For example, Lordstown Motor's tort claims against Hon Hai—claims entirely between non-signatories—would proceed in litigation while LEVC's similar tort claims against non-signatory Hon Hai would be forced to arbitration. This would split similar claims into different fora, straining the

---

[6]     As noted, Count 9 for breach of the CMA, involving only signatories to the CMA (LECV and Foxconn System), was dismissed in favor of arbitration under the CMA's arbitration provision. *In re Nu Ride*, 2024 WL 4176310 at *25. Count 11, which seeks equitable subordination of Defendants' claims, is based on the inequitable conduct alleged in Counts 1 through 10 of the Complaint. Because "the equitable subordination claim brought in Count Eleven is based, at least in part, on allegations of inequitable conduct arising under the CMA," the Bankruptcy Court held that, "to the extent that the Plaintiffs wish to proceed in this Court with prosecution of their equitable subordination claim, they must do so without relying on inequitable conduct relating to the CMA." *Id.* at *10. Plaintiffs represent in their brief that LEVC, as sole counterparty to the CMA, "no longer intends to pursue any equitable subordination claim against signatory Foxconn Technology, and there is therefore no need for this Court to address Foxconn Technology's appeal as to that particular claim." (D.I. 17 at 9 n.1). The Court agrees with Defendants that Plaintiffs cannot amend their pleading through statements in a brief. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). For the avoidance of doubt, the Court agrees with the Bankruptcy Court's ruling with respect to any equitable subordination claim relying on inequitable conduct relating to the CMA and agrees there is no equitable reason to permit non-signatories to compel arbitration of the remainder of the equitable subordination claim.

resources of the reorganized debtor Plaintiffs. As Plaintiffs correctly point out, equitable estoppel is designed to prevent inefficient results, not cause them.

The Bankruptcy Court properly found "substantial equitable reasons not" to enforce an arbitration provision against non-signatories. *In re Nu Ride,* 2024 WL 4176310 at *11. These equitable reasons alone are sufficient to deny Defendants' affirmative estoppel arguments regardless of whether, absent those countervailing factors, a court could accept any of their affirmative arguments in favor of estoppel. Notwithstanding, the Court considers Defendants' arguments below.

### E.    Case Law Does Not Otherwise Support Defendants' Estoppel Arguments

Defendants' plea to force arbitration across legally-distinct entities, in absence of a contract between those parties, rings hollow. As Plaintiffs point out, "the separate legal existence of judicial entities is fundamental to Delaware law." *Feeley v. NHAOCG*, LLC, 62 A.3d 649, 667 (Del. Ch. 2012). The Court agrees that Defendants fall considerably short of the cautious standard articulated in *NAMA. See NAMA Holdings,* 922 A.2d at 433 n.35 (advising "it is important to proceed with a good deal of caution" in applying equitable estoppel).

Defendants argue that under *DuPont*, a "close relationship" can permit a non-signatory to force a signatory into arbitration. (*See* D.I. 6 at 23, 26 (citing *DuPont,* 269 F.3d at 199)).[7] As Plaintiffs point out, *DuPont* did not involve, as here, non-signatories (Defendants) seeking to bind a signatory (Plaintiff) to an arbitration clause. Rather, *DuPont* discussed circumstances when it might to be appropriate to "appl[y] an equitable estoppel theory to bind a non-signatory to an arbitration clause." *DuPont*, 269 F.3d at 199. For this reason, and the additional reasons discussed below, neither of the two theories of equitable estoppel discussed in *DuPont* find application here.

---

[7]    Defendants also cite *Sanum*, but that case does not advance their cause. *Sanum Inv. Ltd. v. San Marco Capital Partners LLC*, 263 F. Supp. 3d 491, 496 (D. Del. 2017). *Sanum* was decided under New York law, not Delaware law, and involved an agency relationship between the signatory and non-signatory defendants. *Id.* Defendants have not shown any relevant agency relationship here and failed to raise that argument below.

"First, courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement." *Id*. (citing *Thomson-CSF, S.A. v. American Arbitration Assoc*., 64 F.3d 773, 778 (2d Cir. 1995). Under this theory, "courts prevent a non-signatory from embracing a contract then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *Id*. at 200. "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000). As the Bankruptcy Court explained, Defendants contend that they have all "embraced" the contracts "to the extent they all seek to enforce the arbitration clauses." *In re Nu Ride*, 2024 WL 4376130 at *10. Under Defendants' reasoning, however, a non-signatory defendant could choose to "embrace" a contract only if and when it wished to use that contract to force arbitration on third parties. That is not the law and was properly rejected by the Bankruptcy Court.

Defendants further cite *Flintkote* to suggest that one particular non-signatory Defendant, Hon Hai, should be able to enforce the JVA's arbitration clause because it "embrac[ed] the contract." (D.I. 6 at 26 (quoting *In re Flintkote*, 769 F.3d at 220-21)). But Defendants' argument gets the analysis backwards. In *Flintkote*, the court wrote that "a non-signatory is equitably precluded from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *Id*. at 221 (internal quotations omitted). The theory of estoppel in *Flintkote* applies against the non-signatory; it does not apply in a non-signatory's favor and against a signatory. Defendants' citation to *Amkor* similarly describes where a signatory seeks to compel a non-signatory to arbitrate. *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp. 2d 519, 521 (E.D. Pa. 2003). Whether a non-signatory has "knowingly exploit[ed] an agreement containing an arbitration

clause, despite never having signed the agreement" (D.I. 6 at 26) has no relevance to whether non-signatories can use estoppel offensively against a signatory.[8]

Under the second theory of estoppel, *DuPont* examines a series of cases in which signatories were held to arbitrate related claims against parent company who were not signatories to the arbitration clause. "In each of these cases, a signatory was bound to arbitrate claims brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations." *DuPont*, 269 F.3d at 200 (cleaned up). "In essence, a non-signatory pierces its own veil to arbitrate claims against a signatory that are derivative of its corporate subsidiary's claims against the same signatory." *Id*. Thus, *DuPont* does not suggest that a "close relationship" between a signatory and a non-signatory is sufficient for any application of estoppel, as Defendants assert. (*See* D.I. 6 at 26; *see also id.* at 23 (quoting *Hong v. Belleville Dev. Grp., LLC*, 2016 WL 4481071, at *4 (S.D.N.Y. Aug. 17, 2016), quoting *DuPont*)). These cases also look to, *inter alia*, "the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract," 269 F.3d at 201 (internal quotations omitted), which here are none because the non-signatories have no formal obligations or duties under the JVA. *Cf. Hong*, 2016 WL 4481071, at *4 (all claims were "closely intertwined with the Agreement and its implementation," would "necessarily involve the interpretation of the Agreement's terms," and all defendants had "close relationships to the

---

[8]    It is further irrelevant whether non-signatory Lordstown Motors "knowingly exploit[ed]" the JVA because estoppel cannot apply between non-signatory Lordstown Motors and the non-signatory Defendants. As to non-signatory Lordstown Motors' single claim against signatory Foxconn Technology (Count 11 for equitable subordination), Defendants merely state, "the Complaint . . . refers to Lordstown Motors Corp. more than 50 times as directly benefiting from the [JVA] or otherwise seeking to enforce its provisions." (D.I. 6 at 27 (citing ¶¶ 29–42 of the Complaint.)) This statement provides no specific basis for an estoppel ruling.

Agreement," including as a "member" of the signatory). And again, as explained in *DuPont* "these cases bind a *signatory* not a *non-signatory* to arbitration." DuPont, 269 F.3d at 202.

Defendants' remaining citations do not advance their cause. Defendants rely on *Douzinas,* to assert that estoppel may apply "when a signatory to an arbitration clause raises allegations of 'substantially interdependent and concerted misconduct' by both a signatory and a non-signatory to the clause." (D.I. 6 at 26 (citing *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006)). The Bankruptcy Court correctly recognized that *Douzinas* was "premised on equitable considerations," that were not present in this case. *In re Nu Ride,* 2024 WL 4376130 at *11. For example, *Douzinas* involved "claims against non-signatories [that] were based on breach of that agreement [containing an arbitration clause] and implicated defenses extant under the agreement." *Id.* & n.93. In *Douzinas*, the court described claims with "identical factual contentions," and the "same course of improper conduct," and reasoned that non-arbitration of those similar claims "would render the arbitration between the signatories meaningless." 888 A.2d at 1153. The Court agrees that *Douzinas* is distinguishable. Here, the non-signatories identify no relevant defense under the JVA to any claim (let alone all claims) against them by LEVC, the scope of the claims against non-signatories is far broader as opposed to "identical," and Defendants fail to show (or meaningfully argue) that litigation of remaining claims would render arbitration of the JVA breach claim meaningless. Defendants simply focus on the "[JVA]'s interrelatedness as to all parties." (D.I. 6 at 28). But as Plaintiffs point out, the question in *Douzinas* was not the *contract's* interrelatedness as to all parties, it was instead the *misconduct's* interrelatedness. (D.I. 17 at 33).

Defendants further assert that "each of the Lordstown Plaintiffs brings claims that rely on the terms of the [JVA]." (D.I. 6 at 28). Defendants fail to explain, however, how any of the non-JVA claims, let alone all claims, relies on the "terms of the JV Agreement," and do not show sufficient interrelatedness of the particular misconduct underlying each claim. According to Defendants,

"Lordstown relies on the terms of the agreements in asserting its claims," because "[t]he Complaint is replete with allegations concerning the terms of the [JVA] and related agreements."  (D.I. 6 at 28).  But this argument falls flat.  Defendants do not show how any claim outside of the JVA, let alone *every* one, necessarily relies on the terms of the JVA to bring the claims simply because "the terms of the JVA and related agreements" are mentioned in the Complaint.  The JVA's terms are necessarily mentioned in the Complaint, as Plaintiffs allege a separate count for breach of the JVA, but that count has already been sent to arbitration.  The Court agrees that there is no basis for forcing into arbitration other claims against other parties simply because, in connection with filing bankruptcy, the Plaintiffs adjoined an arbitrable claim to other non-arbitrable ones in an adversary proceeding.

Defendants have failed to show that the JVA non-signatory Defendants can compel LEVC, let alone non-signatory Lordstown Motors, to arbitrate non-JVA claims by virtue of equitable estoppel.  Because there is no basis to force arbitration involving non-signatories, the Court affirms the Bankruptcy Court's ruling as to all remaining claims with the exception of Count 7—LECV's claim against Foxconn Technology for breach of the APA—which is affirmed for the separate reasons discussed below.

## F.    The APA Provides for Exclusive Court Jurisdiction Over LEVC's Breach Claims—Count 7

In Count 7, LEVC asserts that Foxconn Technology and Foxconn (Far East) breached the APA.  The APA provides that "*any Proceeding* in connection with or *relating to this Agreement* or any matters contemplated hereby *shall be brought exclusively in a court of competent jurisdiction located in the State of Delaware.*"  (A119, APA § 10.14 (emphasis added)).  In other words, the APA expressly contemplates that *all* disputes must be brought exclusively in a court in Delaware—for example, the Bankruptcy Court below.  Thus,  LEVC's APA claim is subject to the APA's own court-resolution procedure.

Defendants' attempt to move claims for breach of the APA outside of the APA's exclusive jurisdiction provision and into another contract's generic "relating to" framework is unavailing. The APA's specific provisions govern suits for *breach of the APA* rather than the JVA's general dispute resolution procedures. This is especially true for Foxconn (Far East), which is a party to the APA and not the JVA. The Third Circuit recognized this basic point in *Field Intelligence Inc v. Xylem Dewatering Sols. Inc*, 49 F.4th 351 (3d Cir. 2022), concluding as to two separate agreements that:

> Each is expressly limited to the subject matter of its agreement: the 2013 contract requires arbitration of disputes "arising out of or in connection with *this Agreement*," . . . whereas the 2017 contract requires litigation of disputes arising "under or concerning *this Agreement*". . .. The result: claims involving the first agreement are heard by an arbitrator, while claims involving the second are heard in court.

*Id.* at 359. Here, two clauses for claims "relating to this Agreement" in two separate contracts can and should be interpreted so that claims under the first agreement are heard pursuant to that agreement's dispute resolution procedures. Moreover, as Plaintiffs point out, Section 10.2 of the APA provides that "this Agreement may not be amended or waived except in a written instrument signed by the Parties and which references the specific section of this Agreement which is to be amended or waived." (A116; *see also* A61 (APA defining "Parties" to include the following four entities: LEVC, Foxconn Technology, Lordstown Motors, and Foxconn (Far East)). By trying to force application of the JVA's arbitration clause, Defendants essentially want to "waive" and "amend" the APA's dispute resolution procedures through a separate contract that was *not* executed by all "Parties" to the APA, include a third party (the joint venture LLC) that was not a party to the APA, and did not "referenc[e] the specific section" of the APA Defendants would now hold waived or amended. *Field Intelligence* found that argument unpersuasive. 49 F.4th at 359 ("The 2013 contract states that it 'may be modified or waived only by an express amendment and waiver in

writing signed by the Parties.' . . . Thus, if they meant to supersede . . . its arbitration obligation, we would expect to see some specific language to that effect in the 2017 agreement. But there is none.").

Finally, even if the APA's forum-selection clause did not directly control the claim for breach of the APA, Defendants have not shown that the APA-breach claim is covered by the JVA's arbitration clause. Defendants argue that the APA breach claim is "related to" the JVA because the Complaint alleges that Foxconn Technology "fail[ed] to 'use its commercially reasonable efforts to enter into a joint venture agreement' and 'dragg[ed] its feet in working to develop the parties' agreed upon joint development platform.'" (D.I. 6 at 18 (quoting Complaint)). But Defendants' argument conflicts with Delaware law's treatment of arbitration agreements for claims "relating to this Agreement," as set forth in the JVA. In *Feeley v. NHAOCG, LLC*, the Court of Chancery assessed a clause covering "[a]ny controversy, dispute or claim arising out of or relating to this Agreement . . .." 62 A.3d at 655. The *Feeley* court clarified that "broadly interpreting" arbitration clauses "will not trump basic principles of contract interpretation." *Id.* (quotations omitted). "A court should not compel a party to arbitrate a cause of action independent of the agreement containing the arbitration provision," where "a cause of action is independent if it could have been brought had the parties not signed the contract containing the arbitration clause." *Id.* at 656 (cleaned up).

Applying Delaware's test, a claim for breach of the APA—even the single provision on which Defendants focus—plainly "could have been brought had the parties not signed the contract containing the arbitration clause." Defendants have only shown that the APA claim will involve certain similar background facts to the JVA. *Feeley* confirmed that claims involving "some or all of the same facts" are not encompassed as "relating to this Agreement" if those claims "could be brought had the parties not signed a contract" containing the arbitration clause. *Id.* (cleaned up). Defendants have not shown that the APA claim is subject to the JVA's arbitration clause.

Rather than apply Delaware law, Defendants point to several federal cases to argue that "relating to" requires only some "logical or causal" connection. (*See* D.I. 6 at 18–19). But "applicable state law governs the scope of an arbitration clause—as it would any other contractual provision." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 522 (3d Cir. 2019). Defendants cannot replace the *Feeley* test with other standards based on federal common law or law from other states.

## G.     Dismissal of the Remaining Contract and Tort Claims in Favor of Arbitration Was Properly Denied for Additional Reasons

Defendants argue that the Bankruptcy Court erred by declining to extend the JVA's arbitration clause to all remaining Counts in the Complaint because "[a]ll Lordstown's claims arise from or relate to the [JVA], and at the very least 'touch matters' covered by that agreement, such that they must be arbitrated." (*See* D.I. 6 at 5, 13-23 (citing *Brayman Constr. Corp.*, 319 F.3d at 625–26); D.I. 25 at 2-10).) The Court disagrees.

### 1.     The IA Provides for Exclusive Court Jurisdiction of Lordstown Motors's Breach Claims—Counts 2–5

In Counts 2 through 5, Lordstown Motors alleges that Foxconn Ventures breached the IA by, among other things, failing to make the required capital investments. As noted above, neither Lordstown Motors nor Foxconn Ventures are a signatory to the JVA. Moreover, the IA's dispute resolution procedures require proceeding in court, not in arbitration, and waive arguments to the contrary. (A281, IA § 8.06(b)). Specifically, § 8.06(b) of the IA provides:

> All Actions arising out of or relating to [the Investment Agreement] shall be heard and determined in the Chancery Court of the State of Delaware (or, if the Chancery Court of the State of Delaware declines to accept jurisdiction over any Action, any state or federal court within the State of Delaware) and the parties hereto hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such Action and irrevocably waive the defense of an inconvenient forum or lack of jurisdiction to the maintenance of any such Action.

(A281). The Court agrees that there is no basis to replace that provision and enforce arbitration on those parties because of a different contract, signed by different parties, at a different time. *In re Nu*

*Ride,* 2024 WL 4376130 at *12 (describing "distinct claims against other parties under other contracts"). Defendants' position would erase the actual agreement between the parties to the relevant contract. The Bankruptcy Court correctly denied arbitration as to the IA breach of contract claims by accepting that "neither the Investment Agreement nor the APA contain arbitration provisions and instead provide that disputes under those contracts are to be heard in federal or state courts in Delaware." *Id*. at *8 & n.66 (quoting provisions).

Defendants' counter-arguments are not persuasive. Defendants argue that the IA's terms do "not negate the parties' agreement to arbitrate all claims relating to the joint venture." (D.I. 6 at 22). But as Plaintiffs point out, this argument ignores that the "parties" to the IA are not parties to the JVA. Defendants further argue that the claim for breach of the IA is one "relating to" the JVA. But *Feeley* clarified that "broadly interpreting" arbitration clauses "will not trump basic principles of contract interpretation." *Feeley*, 62 A.3d at 655 (quotations omitted). "A court should not compel a party to arbitrate a cause of action independent of the agreement containing the arbitration provision," where "a cause of action is independent if it could have been brought had the parties not signed the contract containing the arbitration clause." *Id.* at 656 (cleaned up). Here, the JVA was terminated alongside the execution of the IA. (*See* A261, IA § 5.03(f) (calling for termination of JVA)); A397–398 (termination of JVA)). Thus, Lordstown Motors could plainly bring claims for breach of the IA against Foxconn Ventures regardless of whether LEVC and Foxconn Technology had ever executed the separate JVA.

## 2.    The Tort Claims Are Not Arbitrable—Counts 1, 8, 10

In Counts 1, 8, and 10, Lordstown Motors asserts fraud claims against Hon Hai and Foxconn (Far East) and a tortious interference claim against Hon Hai. No party to any of these claims is a party to the JVA's arbitration clause. Defendants cite no case or argument for enforcing arbitration where neither party to a claim is a party to the arbitration agreement. Defendants rely only on theories

of equitable estoppel that do not apply when claims are brought entirely between non-signatories to the arbitration agreement. Because no party to these claims is a party to the JVA, there is no basis for compelling arbitration.

LEVC asserts similar fraud claims against Hon Hai and Foxconn (Far East) and a tortious interference claim against Hon Hai. Hon Hai and Foxconn (Far East) are not parties to the JVA's arbitration clause, and forcing LEVC's tort claims into arbitration in the name of equity makes little sense when Lordstown Motors's similar claims will remain in court. Indeed, LEVC and Foxconn (Far East) *are* parties to the APA, which compels resolution of claims between those two parties in court. Finally, Defendants fail to show that Count 8 (fraud against Foxconn (Far East)) is covered by the JVA's arbitration clause. Defendants cite paragraph 142 of the Complaint in which Plaintiffs assert that "Foxconn never intended to have a partnership and its statements regarding its interest in a partnership with Plaintiffs were false." (D.I. 6 at 16 (quoting A38)). Defendants ignore, however, the next paragraph that "Foxconn (Far East) Limited made its statements regarding Foxconn's interest in a partnership with Plaintiffs with the intent to induce Plaintiffs to enter into the Plant APA." (*Id.*). A statement alleged to induce entry into the APA does not show a relation to the subsequent JVA. Applying the test from *Feeley*, fraudulently inducing Plaintiffs to enter into the APA is a claim that "could have been brought had the parties not signed" the JVA. *Feeley*, 62 A.3d at 656 (cleaned up). In fact, Foxconn (Far East) *is* a party to the APA, which provides for mandatory litigation in court, not arbitration, for APA claims.

Defendants cite no cases addressing Delaware law's interpretation of arbitration agreements covering claims "relating to this Agreement." Instead, they cite the *Brayman* decision, which involved Pennsylvania law and a contract that explicitly covered "any transaction involved" with the agreement. *Brayman Constr. Corp.*, 319 F.3d at 623, 627. Moreover, the *Brayman* court relied heavily on "the federal policy mandating that we interpret ambiguous contractual language in favor

of arbitration," *id.* at 625, which the Third Circuit subsequently confirmed "does not extend . . . to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause." *Griswold*, 762 F.3d at 271.  Defendants cite the "touch matters" standard from *Brayman*, but *Feeley* held that, under Delaware law, "actions do not touch matters implicated in a contract if the independent cause of action could be brought had the parties not signed the contract." *Feeley*, 62 A.3d at 656.

In sum, the Court finds no error in the Bankruptcy Court's determination that the remaining counts of the Complaint should not be dismissed in favor of arbitration.

### H.    The Certification Request Is Denied

The amended Order and Opinion were issued on October 1, 2024.  Plaintiffs filed their Certification Request on January 27, 2025, following the conclusion of merits briefing.  Even assuming that October 1, 2024 is the relevant deadline, which this Court need not decide, a certification request "shall be made not later than 60 days after the entry of the judgment, order, or decree." 28 U.S.C. § 158(d)(2)(E).  Statutory appeal deadlines are "mandatory and jurisdictional" and cannot be extended, as courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205 at 209, 213–14 (2007).  Adhering to *Bowles*, the courts of appeals that have considered this issue unanimously agree that section 158(d)(2)(E) is such a statute, and that its 60-day deadline is therefore mandatory and jurisdictional and cannot be extended based on equitable considerations.  *See In re Hardin*, 2021 WL 8053513, at *1 (11th Cir. Dec. 1, 2021); *In re Lindsey*, 726 F.3d 857, 861 (6th Cir. 2013); *In re Holloway*, 425 F. App'x 354, 357–58 (5th Cir. 2011).[9]

---

[9]    Plaintiffs nonetheless urge the Court to grant certification *sua sponte* based on a subsequent change in the procedural posture of the adversary proceeding which bears on the timeliness of their request.  The amended Opinion and Order, issued on October 1, 2024, originally denied Defendants' motion to stay the entire adversary proceeding pending their appeal as to arbitrability of the remaining claims.  Subsequently, on December 13, 2024, the Bankruptcy

IV.   **CONCLUSION**

For the reasons set forth herein, the Order is affirmed, and the Certification Request is denied.

An appropriate order will be entered.

---

Court issued an opinion, *In re Nu Ride*, 666 B.R. 510 (Bankr. D. Del. 2024) and accompanying Order (Adv. D.I. 68) in Defendants' favor, staying the entire adversary proceeding pending final resolution of the appeal, pursuant to the Supreme Court's *Coinbase* decision. *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). In *Coinbase*, the Supreme Court held that a district court order denying arbitration was automatically stayed pending appeal because the essence of the appeal was whether the district court had authority to decide the case. As the *Coinbase* decision was not issued in the context of bankruptcy, the parties filed competing briefs on whether the *Coinbase* stay was applicable here. The Bankruptcy Court thoroughly analyzed the competing arguments and ultimately issued a "narrow ruling" holding that, under the facts of this particular case, the *Coinbase* mandate of a stay pending appeal of arbitrability did indeed apply. *See In re Nu Ride*, 666 B.R. at 520.

Thereafter, Plaintiffs filed the Certification Request, arguing that certification "may materially advance the progress of the case" under 28 U.S.C. § 158(d)(2)(a)(iii) reasoning that such certified appeals may be excepted from the *Coinbase* stay under footnote 6 of that decision. In *Coinbase*, the Supreme Court noted that "when Congress wants to authorize an interlocutory appeal, but *not* to automatically stay district court proceedings pending that appeal, Congress typically says so." *Coinbase*, 599 U.S. at 744. In its list of examples, the Supreme Court included appeals certified under 28 U.S.C. § 158(d)(2)(D), which applies narrowly to certified direct appeals from the bankruptcy courts to the courts of appeal. *See id.* n.6. By operation of this exception, Plaintiffs argue, certification of the appeal would remove the *Coinbase* stay, therefore "materially advanc[ing] the progress of the [adversary proceeding]." As such, Plaintiffs argue, certification is "mandatory." (D.I. 31 at 2).

Plaintiffs' argument is a curious one. Section 28 U.S.C. § 158(d)(2)(D) provides: "An appeal taken under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, *unless the respective bankruptcy court*, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, *issues a stay of such proceeding pending the appeal.* 28 U.S.C. § 158(d)(2)(D) (emphasis added). The statute simply provides that a certified appeal does not *automatically* stay the underlying proceeding; it leaves the bankruptcy court every ability to stay the proceeding if warranted. The Bankruptcy Court, in its thorough opinion, has already determined that a stay of the adversary proceeding is appropriate here based (at least in part) on the principles set forth in the *Coinbase* decision. Under Plaintiffs' circular logic, however, the granting of a *Coinbase* stay in any bankruptcy adversary proceeding pending an appeal on arbitrability would *always* trigger certification—as lifting the stay of a proceeding may always arguably "advance" it—and certification would always "undo" the *Coinbase* stay—which the bankruptcy court could then reinstate. Such a rule has no limiting principle and seems at odds with the principles announced in *Coinbase* and the statute itself. Accordingly, the Court declines to issue a separate opinion certifying the appeal *sua sponte*.